The foregoing exceptions were over-ruled by the commissioner; and were brought up for the consideration of the court. After argument, chancellor Desaus-sure pronounced the following decree.:
This case came on upon the commissioner’s report, and exceptions thereto. In the argument of this case, the counsel took a much wider range than the questions made by the re,port and exceptions ; and it wras contended, that Gen. Winn, the principal acting administrator, did not know at the time of Baker’s death, that the debt of J. G. Smith, was the proper debt of Baker alone, to Which Mr. Lenoir was only security ,• and that there has been great laches in the Lcnoirs in their not pursuing their claim for redress, during which Gen. Winn had applied the assets of the estate to pay other bond creditors, and especially some bond debts due to himself. And it was further contended, that Lenoir only being security for Baker, his representatives, even if they had paid the debt, could not recover as judgment creditors, on the ground of judgment having been obtained against Baker by the original creditor, but could recover only as simple contract creditors for money laid out and expended. And that tho’ the original creditor might have called Gen. Winn, as administrator of Baker, to account for the misapplication of the funds of Baser, the security could not, at least not to tho same ext nt and with the same effect as the creditor might have done. Before we; consider the. commissioner’s report, and the exceptions to it, it is proper to examine and decide-upon these ques- *74 tioris made by the counsel. On examining- the answer of (¿en- iff inn, it appears that ho does admit that the debt of ^olm C. Smith was the proper debt of Baker alone, it is true he does not state when he came to that knowledge y but l* docs not allege that he had made an appropriation of the assets of Mr. Baker before he came to the knowledge of that fact-, which he certainly would have done, if the fact would have warranted his doing so. But if the fact had been so, it would not have made any difference in this case, for it was a judgment debt which the administrator ivas bound to notice, and lie could not legally or justly apply any,part of the assets of the estate of Baker, to the payment of bond debts, or any other of inferior degree, until this judgment debt was totally paid off 5 nor does there, appear to have been any blamea-blc laches on the part of the representatives of the security, Mr. Lenoir. It is alleged that if they had insisted on the principal pursuing his demand against Baker’s estate more vigorously, the security might have been relieved, if their remonstrances had not been attended to. This is true, but it does not follow that because the security did not seek relief from the debt by insisting on the, creditor’s pursuing the principal debtor with rigor, that the security looses his claim to be protected and rc-im-'bursed, if he should ultimately be made liable to pay the. debt. It would be a very harsh doctrine, and comes with a very ill grace from the principal, whose estate has been favored. But it is insisted that the security is not entitled to take the high ground of the original creditor, who had the bond and judgment, and must come in as a mere simple contract creditor. In many cases, if this doctrine prevailed, the greatest injustice would be done, and securities would be wholly ruined by their kindness to, and confidence in their principal, for whom they had consented to be hound. In this particular case the innocent and helpless children of Mr. Lenoir, the security, would be deeply injured by such a doctrine. It is indeed true, that this is the doctrine at law j the narrow rules and modes of proceeding in that court, prevent the judges there from giving the relief which they wsuld be inclined *75 to do. Hence tlie necessity of the interposition of this court, which being entrusted with larger powers and wider range of authority, is bound to exercise it to prevent so great an injustice as would result from the narrow legal doctrine. And this court has long exercised this power, to promote the purposes of justice, and has gone much further than this case. In Burrowes and Brown ~os. MVWhann, administrator of Carnes, decided in 1794, the court laid down the rule in the broadest extent. Bur-rowes, Brown and Carnes, were securities for Banks in a large bond to Warrington, on which judgment had been obtained against them all. Banks was utterly insolvent ; Burrows and Brown paid large sums on the debt j Carnes . paid nothing and died leaving a good deal of property, but not enough to pay all his debts. MVWhann, to whom Carnes was indebted on bond as security for Banks, administered on Carnes’ estate ; and finding that Bur-rowes and Brown bad paid off almost all the debt to Warrington, be paid off the small balance on the judgment, in order to get satisfaction entered by the creditor on the judgment; then he retained the remaining funds of Carnes, to pay himself the bond debt due him. Bur-rowes and Brown filed their bill to set up the judgment at law, notwithstanding the satisfaction entered on it, mid to compel the administrator of Carnes to pay his proportion of the debt, before he should be allowed to retain what was due to him on his bond, and the court on full consideration gave the relief prayed for. This case is much stronger than the one now before the court, inasmuch as the. relief was given to securities against a co-security, and not merely against a principal; and to give the relief it was necessary to revive a judgment on which satisfaction had been regularly entered, in order to let in the securities to the benefit of that judgment, and secure them a priority under its protecting wing. I feel myself bound then by the principles of equity, and by the decided cases, to give the relief demanded, and to support the claim of the complainants in this case. I must, therefore, confirm the commissioner’s report, and agree with him in overruling the first exception made by the defendant's counsel.
Blanding for complainant, Nott for defendant.
The second exception is more embarrassing. In many cases the law makes co-administrators liable for the acts of each other as well as for their joint acts; and if I saw any ground to believe that Gen. Winn, the co-administrator of Hunter, had acted improperly in this transaction,'I should make him liable. But there is no proof that he has acted in that manner. The sale was made under the authority of the court. Hunter, the co-administrator, purchased at the sale, and soon after-wards and before the money was due he went off the state and carried off the property with him. There is no evidence to induce the belief that Gen. Winn was privy to this improper conduct of his* co-ad ministrator, and the court will not presume it. The interval between Hunter’s purchase and his going off, seems to have been so short, that it would not be reasonable to impute laches to Gen. Winn in not having collected the money due by Hunter to the estate, especially as Ids co-administrator liad as much right to keep the money in his own hands, for the use of the estate, as Gen. Winn. I feel myself, therefore, bound to support the second exception.
We come now to the consideration of the third exception, which relates to the allowance of interest to he paid by Gen. Winn on the assets received by him, and applicable to the purposes of the estate. Upon this question, T have no doubt Gen, Winn should have applied the assets, as soon as possible, to the payment of the debt to the public, and to the debt of J. C. Smith ; not having done so, he had the use of them, and he is bound in conscience to pay interest thereon. The commissioner’s opinion, overruling the third exception, is therefore confirmed.
Let it, therefore, he referred back to the commissioner, to state the accounts conformably to the principles of this decree,
Henry Wm. Besaussure.